THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DONALD F. CULBERTSON, Defendant-Appellee.

Second District   No. 2—92—0565

Opinion filed March 8, 1994.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Gregory J. Ellis, of Oak Brook, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals from an order granting a petition filed by the defendant, Donald F. Culbertson, to rescind the statutory summary suspension of his driver's license. (Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 11—501.1(a) (now 625 ILCS 5/11—501.1(a) (West 1992)).) The sole

issue on appeal is whether the court erred by holding that the parking lot in question was not a public highway. For the following reasons, we reverse and remand.

On February 27, 1992, the defendant drove his automobile to the Metra train station in Wood Dale, Illinois, and parked in the Metra commuter parking lot. In the evening, the defendant departed the train, returned to his automobile, and started the car. He testified that he did not put the automobile in gear and did not move from the parking stall.

On that evening, Officer Ronald Lamorte of the Wood Dale police was patrolling the area around the Metra commuter parking lot. He observed the defendant's automobile parked in a parking stall with the motor running. The keys were in the ignition. The defendant was slumped backwards in the driver's seat. After the defendant performed field sobriety tests, he was placed under arrest for driving under the influence. At the Wood Dale police station, the defendant received the warning to motorists, which informed him that his driving privileges would be suspended for six months if he refused to submit to a breathalyzer test. The warning also indicated that the defendant's driving privileges would be suspended for a minimum of three months, if the test disclosed an alcohol concentration of .10 or greater. The defendant's result of the breath test indicated an alcohol concentration greater than .10.

On April 8, 1992, a hearing was held to rescind the statutory summary suspension of the defendant's driver's license. On cross-examination, Officer Lamorte testified that the City of Wood Dale owns the parking lot and maintains it by paving, cleaning, and plowing. On redirect examination, Officer Lamorte stated that the police consider the parking lot to be a public highway because it has a main access to the public highway adjacent to the lot. The State argued, without citation to authority, that the defendant was in actual physical control of the automobile. The State further argued that the parking lot was owned and maintained by the City of Wood Dale and met the definition of a highway as provided by section 1—126 of the Illinois Vehicle Code (Vehicle Code (Ill. Rev. Stat. 1991, ch. 95$^{1}$/2, par. 1—126 (now 625 ILCS 5/1—126 (West 1992))).

The court found that the parking lot in which the defendant's vehicle was parked was not a public highway. The court expressly stated, "I'm not finding this to be private property; I'm just finding it not to be a highway." The petition to rescind the statutory summary suspension of the defendant's driving privileges was granted.

The State filed a motion to reconsider the prior ruling. At the hearing on the motion to reconsider, the defendant introduced a cer-

tified copy of the land lease for the parking lot in question. The lease indicated that the Chicago, Milwaukee, St. Paul & Pacific Railroad Company owns the parking lot and that the City of Wood Dale leased it for a period of 20 years commencing on November 15, 1977. Again, the court found the parking lot was not a public highway and denied the State's motion to reconsider. The State appealed.

Under section 11—501.1 of the Vehicle Code, a person driving, or in actual physical control of a motor vehicle on a *public highway*, impliedly consents to take a complete test or chemical analysis of breath, blood, or urine for purposes of determining the concentration of alcohol or drugs in that person's blood. (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 11—501.1(a) (now 625 ILCS 5/11—501.1(a) (West 1992)).) The State argues that the trial court erred in finding that the parking lot where the defendant was found sleeping in the driver's seat of his automobile with the motor running was not a public highway.

The provisions of the implied-consent statute are applicable when a person is in control of a vehicle on a "public highway." Section 1—126 of the Vehicle Code defines "[h]ighway" as "[t]he entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for purposes of vehicular travel." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 1—126 (now 625 ILCS 5/1—126 (West 1992)).

In this case, the lease presented by the defendant indicates that the Chicago, Milwaukee, St. Paul & Pacific Railroad Company *owns* the parking lot where the defendant was found. The lease also indicates that the City of Wood Dale (City) leases the parking lot from the owner for $675 annually. The terms of the lease require the lessee, the City, to utilize the premises as a site for a "fee-commuter parking lot and landscaping" and no other purpose. Through the lease, the lessee releases the owner and agrees to indemnify against all loss, damage, and injury caused by or resulting from any act or omission of the lessee to persons on the parking lot. Any claim of negligence arising from the joint or concurring negligence of both parties is to be shared equally. The lease obligates the City to pay all taxes and assessments on the property, erect facilities "appropriate for the uses herein mentioned," and "keep said premises and all improvements thereon in a neat and orderly condition." Officer Lamorte corroborated this evidence when he testified that the City maintains the parking lot by paving, plowing, and cleaning.

The defendant cites *People v. Montelongo* (1987), 152 Ill. App. 3d 518, and *People v. Kissel* (1986), 150 Ill. App. 3d 283, as support for the proposition that the implied-consent statute does not apply to persons operating vehicles in private parking lots. These cases are

factually distinguishable from the instant case because the trial court did not find "this to be private property." Assuming *arguendo* the property was privately owned, we do not believe such criterion controls. The terms of the implied-consent statute apply to drivers on public "highways," which are defined by the Vehicle Code as "[t]he entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for purposes of vehicular travel." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 1—126 (now 625 ILCS 5/1—126 (West 1992)).) Contrary to *Montelongo* and *Kissel*, the issue in this case is not ownership, but maintenance.

Support for our analysis lies in *People v. Bailey* (1993), 243 Ill. App. 3d 871. In *Bailey*, the defendant hit another car while driving in a parking lot which was posted with municipal parking lot signs and was maintained by the municipality. In holding that a municipal parking lot was a public "highway" under the implied-consent statute, the court relied on *People v. Jensen* (1976), 37 Ill. App. 3d 1010. *Jensen* reasoned that the Vehicle Code's definition of a "highway" was "broad enough to encompass *publicly-maintained* parking lots" for purposes of prosecuting for driving with a suspended license. (Emphasis added.) (*Jensen*, 37 Ill. App. 3d at 1013.) Both *Bailey* and *Jensen* indicate that the focus of the inquiry is public maintenance, and not ownership.

Similar to *Bailey*, the undisputed evidence at the suspension hearing and on rehearing established that the parking lot in question was owned by a private entity, but was maintained by a municipality, a public entity. Through the 20-year lease, the City has assumed the responsibility of maintaining the parking lot in the instant case. As such, the lot has assumed the character of a public way. Consistent with the holding of *People v. Bailey*, the evidence in this case is manifest that the parking lot was publicly maintained. Thus, we determine that the parking lot in question fell within the definition of a "public highway" under the statutory summary suspension statute since it was publicly maintained and open to use by the public for vehicular travel. Therefore, the trial court erred by granting the defendant's petition to rescind the statutory summary suspension of his driver's license.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings consistent with the opinion of this court.

Reversed and remanded.

INGLIS, P.J., and GEIGER, J. concur.