2018 IL App (3d) 170201

Opinion filed February 21, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0201 Circuit No. 16-DT-1285 |
| DAKSH N. RELWANI, | ) ) ) | The Honorable Carmen Julia Lynn Goodman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Lytton dissented, with opinion.

_____

**OPINION**

¶ 1       Defendant, Daksh Relwani, was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)). He filed a petition to rescind his statutory summary suspension, which the trial court denied after a hearing. Defendant filed a motion to reconsider, which the trial court also denied. Defendant appeals. We affirm the trial court's judgment.

¶ 2                                                    FACTS

¶ 3        On October 10, 2016, at about 3:30 a.m., defendant was asleep in the driver's seat of his vehicle in the parking lot of a Walgreens drug store in Joliet, Will County, Illinois. Defendant was the only person in the vehicle at the time. The keys to the vehicle were in the ignition, and the engine was running. Police officers approached the vehicle, woke defendant, and subsequently arrested defendant for DUI. After defendant was arrested, he was taken to the police station, where he allegedly refused to submit to some form of chemical testing. Defendant's driver's license was later summarily suspended by the Secretary of State.

¶ 4        In November 2016, defendant filed a petition to rescind the statutory summary suspension of his driver's license. Defendant alleged in the petition that rescission was warranted based on, among other things, the following two grounds: (1) the summary suspension statute did not apply in this case since defendant was located in a private parking lot and not on a public highway during the incident in question and (2) defendant did not refuse to submit to chemical testing.

¶ 5        A hearing was held on the petition to rescind in January 2017. In his case-in-chief, defendant testified to many of the facts set forth above. Defendant also stated, among other things, that the police officer asked him at the police station to submit to a breath test and that he agreed. Defendant identified in court the copy of the notice of summary suspension that he was given by the arresting officer at the police station, and the document was admitted into evidence. According to defendant, as he viewed the document in court, none of the check boxes on the document were marked to show whether defendant had submitted to, or refused, chemical testing, and the space provided for the officer to write in the date and time of any refusal was left blank.

¶ 6        On cross-examination, when the prosecutor asked defendant if he had told the police officer that he had just driven down Larkin Avenue from Chicago, defense counsel objected that the question was beyond the scope of direct examination. The trial court overruled the objection, stating that "this [was] cross-examination." Defendant responded that he came home from a restaurant with his family. Defendant stated that he did not remember the exact words he had stated to the officer but acknowledged that he had been driving from the restaurant with his family (or that he told the officer that). The prosecutor asked defendant where the restaurant was located, and defense counsel objected again, stating that the question was beyond the scope of direct examination. The trial court overruled the objection, commenting that it was cross-examination, so the question could not be beyond the scope. When defendant was asked during cross-examination whether he was told the results of the breath test that he had agreed to take, defendant stated that he did not remember. Defendant also stated, upon inquiry, that he did not remember whether the officer had asked him to submit to a blood or urine test or whether he had refused that request. During further cross-examination, defendant stated that he remembered performing some of the field sobriety tests that evening but did not remember performing all of the field sobriety tests. When defendant was asked if the reason he did not remember was because he was intoxicated and had taken heroin and clozapine that evening, defendant responded, "I, I don't know. I guess."

¶ 7        On redirect examination, defendant stated that while he was at the police station, he was administered a drug and then taken to the hospital for treatment because of his condition.

¶ 8        After defendant testified, he rested his case-in-chief. The prosecutor moved for a directed finding in the State's favor on the petition to rescind. During argument on the motion (and in opening statement), defense counsel suggested to the trial court that it could take judicial notice

of what was in the court file (presumably the sworn report) and commented that the document in the court file was marked that defendant had refused to submit to, or failed to complete, chemical testing, which was completely different from the document defendant received.

¶ 9 After the arguments on the motion for directed finding had concluded, the trial court granted the motion in favor of the State on both of the grounds for rescission listed above. In making its decision, the trial court commented:

"Here, privately-owned parking lots are—is really referring to if you're in your own driveway and they see people sitting in their own driveway and they walk out to their car.

Here we have not truly established the fact, by the petitioner's case, that this truly was—they said he was in the Walgreens, that it was privately-owned parking lot. If I don't know that. I can't assume that simply because it is the parking lot of Walgreens.

Also, it was put into evidence the officer's—and taken judicial notice of the summary suspension revocation. I will admit that somehow or another this copy, it says "Transfer to SDF" on here, which is not on the original that I have. Not only on the original that—or on the one that's in the file does it show the refusal date at the place and time at the top of the ticket looks blank.

But this is where this gets—and this is why I say this is a copy. It says, [b]ecause you refused—there's a line down here, because you refused to submit to or to—or fail to complete testing, your driving privileges will be suspended for a minimum of 12 months.

On the copy that was in the—and this is dealing with the defects of an officer's report and a summary suspension does not show—it shows a big line that, that's clearly marked in. The copy, though, had you take[n] a really good look at this copy, it looks like at one point in time it was marked. It looks like a little bitty X that was there, but it is light and it's faint.

\*\*\*

Now, the defendant did testify that he did not—he clearly testified that he was woken up by the police officers and that he was sleeping behind the wheel of a car on direct examination and that he agreed to provide a breath test.

However, when asked several questions under cross-examination—and it was cross[-]examination so it's not beyond the, the scope—his ability to remember and recall, he pretty much says—I guess he didn't[ ] recall because of taking a multiple number of drugs. \*\*\*

\* \* \*

That his ability to recall—he recalls some things. Most of he didn't recall. He didn't even recall some of the tests. We know that—we know that some tests were administered—it's not that many tests for sobriety tests. And he said he recalled some and he didn't recall others because of heroin and such.

So we have not truly established that this was privately-owned parking lots. And we have to be very careful on what's privately owned. Even up under the statute when you're dealing—and there's a litany of case law—even if you were dealing with driving while your license was suspended, some parking lots—

and it has to be on a public highway—some parking lots are considered private and some are not. Especially the airport.

So I don't know if Walgreens, that parking lot was public—privately owned or publicly owned because it is accessed by the public on a daily basis.

* * *

So when they say 'privately owned,' they're pretty much talking about your own parking lot."

¶ 10    Defendant filed a motion to reconsider, which the trial court subsequently denied. Defendant appealed.

¶ 11                                                ANALYSIS

¶ 12    As his first point of contention on appeal, defendant argues that the trial court erred in granting the State's motion for a directed finding at the summary suspension hearing at the conclusion of defendant's case-in-chief. Defendant asserts that the trial court's finding—that defendant had failed to establish a *prima facie* case for rescission—was against the manifest weight of the evidence. More specifically, as to the first ground for rescission put forth by defendant—that the relevant events in this case took place on a private parking lot and not on a public highway—defendant contends that the trial court's finding was against the manifest weight of the evidence and contrary to a long line of cases, which unequivocally held that the summary suspension statute (also known as the implied consent statute) cannot be applied to an individual who was driving or in actual physical control of a motor vehicle in a private parking lot, rather than on a public highway (referred to hereinafter as the private parking lot rule). Defendant contends further that the State did not present any evidence in this case to show that defendant was observed driving on a public street or that the parking lot in question was publicly

owned or was maintained by a government entity as was necessary to establish that the parking lot was a public highway. According to defendant, the trial court's ruling on this particular ground for rescission was based upon the trial court's incorrect belief that the private parking lot rule applied only when an individual was in his own driveway when the incident occurred. As for the second ground for rescission put forth by defendant—that defendant did not refuse to submit to chemical testing—defendant again contends that the trial court's ruling was against the manifest weight of the evidence, which defendant claims showed that defendant agreed to submit to a breath test. Furthermore, defendant contends that the State did not present any evidence to show that defendant had refused to submit to any chemical tests requested by the police officer. For all of the reasons stated, defendant asks in his briefs on appeal that we vacate the trial court's ruling and rescind defendant's statutory summary suspension. In oral argument, however, defendant acknowledged that since the trial court granted a directed finding in this case, the more appropriate remedy for this court to grant if defendant prevails on this issue is to remand this case for the trial court to complete the remainder of the summary suspension hearing.

¶ 13 The State argues that the trial court's ruling granting the State's motion for directed finding was proper and should be upheld. As for the first ground for rescission put forth—the private parking lot rule—the State asserts that under the established law, a parking lot on privately owned property may constitute a public highway for purposes of the summary suspension statute and that it was defendant's burden, therefore, to present evidence to establish that the parking lot in this case was not a public highway, which defendant failed to do. Specifically, according to the State, defendant failed to present any evidence to show that the parking lot was privately owned and privately maintained, and the mere fact that the parking lot was a Walgreens parking lot, in and of itself, was insufficient to establish that the parking lot was

not a public highway. In addition, the State maintains, the fact that the vehicle was in the Walgreens parking lot and that defendant was the only person in the vehicle gave rise to an inference that defendant had driven the vehicle to that location on the public streets, as did defendant's statement to the police that he had come back to Joliet in the vehicle from a restaurant in Chicago. The State contends, therefore, that defendant failed to establish a *prima facie* case for rescission on the first ground put forth. As for the second ground for rescission put forth—that defendant did not refuse to submit to chemical testing—the State asserts that defendant failed to present any evidence that he did not refuse to submit a blood or urine test and that the sworn report, of which defendant asked the trial court to take judicial notice, indicated that defendant had refused to submit to chemical testing and noted the place and time of that refusal. The State maintains, therefore, that defendant failed to establish a *prima facie* case for rescission on the second ground put forth. The State points out, however, that even if we agree with defendant, the proper remedy would be to remand this case for the State to present its evidence in the summary suspension hearing (to proceed with the rest of the hearing), not to rescind the summary suspension, as defendant suggests.

¶ 14    A hearing on a petition to rescind a statutory summary suspension of a person's driving privileges is a civil proceeding. *People v. Helt*, 384 Ill. App. 3d 285, 287 (2008). The defendant bears the burden of proof at the hearing to establish a *prima facie* case for rescission and must present some evidence on every necessary element of the ground asserted. *Id.* If the defendant does so, the burden shifts to the State to come forward with evidence to justify the summary suspension. *Id.* However, if the defendant fails to establish a *prima facie* case, a directed finding should be granted for the State on the petition to rescind. *Id.* A trial court's finding of whether a defendant has established a *prima facie* case for rescission will not be reversed on appeal unless

8

it is against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence only if it is clearly evident from the record that the trial court should have reached the opposite conclusion or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 15                              I. The Private Parking Lot Rule

¶ 16        As noted above, the first ground for rescission put forth by defendant was that the relevant events took place in a private parking lot and not upon a public highway. Under the summary suspension statute (also known as the implied consent statute), any person who drives or is in actual physical control of a motor vehicle on a public highway is deemed to have given his or her consent to a chemical test or tests of blood, breath, other bodily substance, or urine for the purpose of determining the content of alcohol, drugs, intoxicating compounds, or any combination thereof in the person's blood if the person is arrested for any offense as defined in section 11-501 of the Illinois Vehicle Code (DUI), a similar provision of a local ordinance, or section 11-401 of the Vehicle Code (a motor vehicle accident involving death or personal injury) (625 ILCS 5/11-401 (West 2016)). 625 ILCS 5/11-501.1 (West 2016); *People v. Culbertson*, 258 Ill. App. 3d 294, 296 (1994). As the language of the statute indicates and defendant asserts, the summary suspension statute only applies to individuals who were driving or in actual physical control of a motor vehicle on a public highway. See 625 ILCS 5/11-501.1 (West 2016); *Culbertson*, 258 Ill. App. 3d at 296. The summary suspension statute does not generally apply to a person who was driving or in actual physical of a motor vehicle on private property. See 625 ILCS 5/11-501.1 (West 2016); *Culbertson*, 258 Ill. App. 3d at 296.

¶ 17        Pursuant to the established case law, however, a parking lot on privately owned property may constitute a public highway for the purposes of the summary suspension statute. *Helt*, 384

9

Ill. App. 3d at 288; *Culbertson*, 258 Ill. App. 3d at 296-97. If the parking lot is open to the public for use for vehicular travel and publicly maintained, it will constitute a public highway for summary suspension purposes, even if the parking lot is on privately owned property. See 625 ILCS 5/1-126 (West 2016) (defining the term, "[h]ighway," as used in the Vehicle Code); *Helt*, 384 Ill. App. 3d at 288; *Culbertson*, 258 Ill. App. 3d at 296-97. Therefore, where a defendant claims at a summary suspension hearing that the summary suspension statute does not apply to him because he was driving or in actual physical control of a motor vehicle on a private parking lot and not on a public highway, to establish a *prima facie* case for rescission, he must present some evidence that the parking lot in question did not constitute a public highway under the law. See *Helt*, 384 Ill. App. 3d at 288. That is, he must present some evidence that the parking lot was on privately owned property and was privately maintained. See *id.*

¶ 18    In the present case, defendant did not dispute that he was in actual physical control of the motor vehicle in the Walgreens parking lot and presented no evidence whatsoever to show that the parking lot was on privately owned property and that it was privately maintained. The mere fact that the parking lot in this case was for a Walgreens drug store did not provide any further evidence as to who actually owned or maintained the parking lot. Thus, the trial court's ruling— that defendant had failed to establish a *prima facie* case for rescission based upon the private parking lot rule—was not against the manifest weight of the evidence. We need not determine, therefore, whether the facts of this case created an inference that defendant had driven on the public streets, as suggested by the State.

¶ 19    In reaching the conclusion that we have reached on this particular ground for rescission, we must take a moment to comment upon the three cases relied upon by defendant in support of his position: *People v. Ayres*, 228 Ill. App. 3d 277, 278 (1992); *People v. Kissel*, 150 Ill. App. 3d

10

283, 285-87 (1986), *overruled on other grounds by People v. Brown*, 175 Ill. App. 3d 725, 728 (1988); and *People v. Montelongo*, 152 Ill. App. 3d 518, 521-23 (1987). In *Ayres* and *Kissel*, it appears that it was undisputed between the parties that the parking lots in question were private property and not public highways for the purposes of the summary suspension statute (see *Ayres*, 228 Ill. App. 3d at 278 (refers to the parking lots in question in the recitation of the facts as private parking lots and makes no reference that the State asserted that the lots constituted public highways); *Kissel*, 150 Ill. App. 3d at 285 (the State did not argue that the lots in question constituted public highways but, rather, argued instead that the summary suspension statute applied to any person shown to have driven at any time in the past on a public highway)). And in *Montelongo*, evidence was presented to show that the parking lot in question was privately owned and privately maintained (see *Montelongo*, 152 Ill. App. 3d at 520 (police officer testified that he had never seen any governmental agencies maintaining the parking lot, defendant testified that the parking lot was fenced and had a sign indicating that the lot was private and was provided for the use of patrons, and another witness indicated that she believed the lot was provided only for the use of the patrons of the establishment)). Thus, the facts and the arguments made in all three of the cases relied upon by defendant here are readily distinguishable from the facts and arguments made in the present case. See *Ayres*, 228 Ill. App. 3d at 278; *Kissel*, 150 Ill. App. 3d at 285; *Montelongo*, 152 Ill. App. 3d at 520.

¶ 20    Furthermore, the fact that the trial court was apparently mistaken in its belief about the application of the private parking lot rule does not change the result here, as we may affirm on any basis supported by the record. See *People v. Lee*, 2016 IL App (2d) 150359, ¶ 14 (applying that rule in the context of a trial court's mistake about a material fact). Indeed, it is well

established that it is the trial court's judgment, and not its reasoning, that is the subject of our review on appeal. See *People v. Cleveland*, 342 Ill. App. 3d 912, 915 (2003).

¶ 21                              II. The Refusal to Submit to Chemical Testing

¶ 22        As noted above, the second ground for rescission put forth by defendant was that he did not refuse to submit to chemical testing. When the summary suspension statute applies, it requires that an individual submit to chemical testing and imposes a period of suspension (or in some cases, a revocation) upon a person who refuses to submit to those tests or who tests at or above a certain level for the presence of alcohol, drugs, intoxicating compounds, or a combination thereof in his or her blood. See 625 ILCS 5/11-501.1 (West 2016). An officer may request that a defendant submit to more than one type of chemical test under the summary suspension statute. See *People v. Kirk*, 291 Ill. App. 3d 610, 615 (1997) (stating that an officer who has probable cause to believe that a driver is chemically impaired and arrests him for DUI may request, under the summary suspension statute, that the driver submit to any or all of the chemical tests listed in the statute to determine whether the driver is, in fact, chemically impaired).

¶ 23        In this particular case, defendant testified that he agreed to submit to a breath test. Defendant, however, could not remember what had happened with that test and also could not remember whether the officer had asked him to submit to a blood or urine test and whether he had refused to do so. In addition, the sworn report, of which defendant asked the trial court to take judicial notice, showed defendant had refused to submit to, or failed to complete, chemical testing and also indicated the place and time of that refusal. Therefore, even if defendant established that he did not refuse to submit to a breath test, he failed to establish that he did not refuse to submit to a test of his blood or urine. Furthermore, although defendant attempts to

12

suggest suspicious conduct on the part of the arresting officer based upon an alleged difference between the form that defendant received and the form that was in the court file, it appears from the record that the trial court believed, based upon a review of the forms in question, that the difference could be explained by the fact that the form in the court file was the original and that the form given to defendant was merely a copy and that some of the print may not have transferred through to the copy that defendant was given. Under the circumstances of the present case, therefore, we conclude that the trial court's finding as to the second ground put forth for rescission—that defendant did not refuse to submit to chemical tests—was not against the manifest weight of the evidence. See *Best*, 223 Ill. 2d at 350.

¶ 24               III. Defendant's Beyond-the-Scope Objection to Cross-Examination

¶ 25        As his final point of contention on appeal, defendant argues that the trial court committed reversible error when it overruled defendant's beyond-the-scope objection to some of the prosecutor's questions of defendant in cross-examination. According to defendant, the trial court's incorrect ruling was based upon the court's erroneous belief that a beyond-the-scope objection did not apply to cross-examination. Defendant asserts, albeit in his reply brief, that he was prejudiced by the trial court's erroneous ruling because it allowed the State to elicit testimony from defendant, which formed the basis for the State's contention that defendant had driven on public streets. Defendant asks, therefore, that we reverse the trial court's ruling and remand this case for a new hearing on defendant's petition to rescind statutory summary suspension.

¶ 26        The State argues that the trial court's ruling was proper and should be upheld. The State asserts first that the trial court properly overruled the objection because the questions asked by the prosecutor about other statements defendant had made to police (regarding where he had

13

come from in the vehicle) did not exceed the scope of direct examination, since defendant testified in direct examination about some of the statements he had made to police. Thus, according to the State, the questions merely offered the ability to explain defendant's testimony by putting it in the context of the whole conversation defendant had with the police officers. Second, and in the alternative, the State asserts that even if the trial court should have sustained the objection, any error that occurred was harmless, as the evidence presented already showed that defendant was in actual physical control of a motor vehicle on a public highway (the parking lot). For both of the reasons set forth, the State asks that we affirm the trial court's judgment.

¶ 27 The scope of cross-examination is generally limited to the subject matter of direct examination plus any matters affecting the credibility of the witness. Ill. R. Evid. 611(b) (eff. Oct. 15, 2015); *People v. Milbratz*, 323 Ill. App. 3d 206, 211 (2001). Courts, however, should liberally construe that limitation to allow inquiry into whatever subject tends to explain, qualify, discredit, or destroy the witness's direct testimony. Ill. R. Evid. 611(b) (eff. Oct. 15, 2015); *Milbratz*, 323 Ill. App. 3d at 211. The determination as to the amount of latitude to be given to a litigant in cross-examination is a decision that rests within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion that results in manifest prejudice to the defendant. *Milbratz*, 323 Ill. App. 3d at 211-12. The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 28 Upon our review of the record in the present case, we find that the trial court's ruling did not constitute an abuse of discretion. See *Blum*, 235 Ill. 2d at 36; *Leona W.*, 228 Ill. 2d at 460.

14

Defendant testified on direct examination about his interactions with the police officers that night at both the scene of the incident and at the police station and about some of the statements that he had made to the police officers. We cannot say, therefore, that the trial court committed an abuse of discretion by ruling that questions about other statements that defendant had made to the police officers during those same interactions that evening were within the scope of direct examination. See *Milbratz*, 323 Ill. App. 3d at 211. We also believe that, contrary to defendant's assertion, the questions did, to some extent, pertain to defendant's credibility, as the more selective defendant's memory appeared to be in response to questions, the less credibility defendant had as a witness in this case. Finally, as the State correctly points out, there was no prejudice to defendant from the information elicited as we have already determined that the evidence presented at the summary suspension hearing showed that defendant was in actual physical control of a motor vehicle and that defendant failed to establish a *prima facie* case that the parking lot in question was not a public highway. We, therefore, reject defendant's argument on this issue.

¶ 29                                    CONCLUSION

¶ 30        For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 31        Affirmed.

¶ 32        JUSTICE LYTTON, dissenting:

¶ 33        I dissent from the majority's opinion for two reasons. First, I disagree that it was defendant's burden to prove that the Walgreens parking lot where he was found sleeping in his vehicle was not a public highway. I also disagree that the State met its burden of proving that defendant improperly refused to submit to chemical testing. I would reverse and remand for a new summary suspension hearing.

15

¶ 34                              I. Private Parking Lot

¶ 35          The implied consent statute provides: "Any person who drives or is in actual physical

control of a motor vehicle upon the public highways of this State shall be deemed to have given

consent *** to a chemical test or tests of blood, breath, other bodily substance, or urine for the

purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or

compounds or any combination thereof in the person's blood if arrested *** for [DUI]." 625

ILCS 5/11-501.1(a) (West 2016). Under this statute, a defendant arrested for DUI on the public

highways must either submit to chemical testing or face statutory summary suspension. *People v.*

*Garriott*, 253 Ill. App. 3d 1048, 1051 (1993).

¶ 36          The Illinois Vehicle Code (Code) defines a "highway" as "[t]he entire width between the

boundary lines of every way publicly maintained when any part thereof is open to the use of the

public for purposes of vehicular travel." 625 ILCS 5/1-126 (West 2016). Private parking lots are

not "highways" unless they are publicly maintained. See *People v. Helt*, 384 Ill. App. 3d 285,

288 (2008); *People v. Culbertson*, 258 Ill. App. 3d 294, 297 (1994); *People v. Bailey*, 243 Ill.

App. 3d 871, 874 (1993); *People v. Jensen*, 37 Ill. App. 3d 1010, 1013 (1976).

¶ 37          "A statutory summary suspension hearing is a civil action where the defendant motorist,

as the petitioner, requests the judicial rescission of a suspension, and the State is placed in the

position of a civil defendant." *People v. Tibbetts*, 351 Ill. App. 3d 921, 926 (2004). "[T]he

motorist initially bears the burden of establishing a *prima facie* case by putting on some evidence

of every element essential to his or her cause of action for rescission of the suspension." *People*

*v. Bavone*, 394 Ill. App. 3d 374, 377 (2009). Once the motorist establishes a *prima facie* case, the

burden shifts to the State to negate the motorist's claim and justify the summary suspension. *Id.*

A motorist's failure to establish a *prima facie* case warrants a directed finding in favor of the State. *People v. Marsala*, 376 Ill. App. 3d 1046, 1048 (2007).

¶ 38       I disagree with the majority that defendant had to prove that the parking lot where he was arrested was both privately owned and privately maintained in order to establish a *prima facie* case for rescission. A motorist establishes a *prima facie* case for rescission by showing that he was operating or in control of his automobile in the parking lot of a private business. See *People v. Ayres*, 228 Ill. App. 3d 277, 278 (1992) (rescission affirmed where defendants were observed driving in privately owned parking lots); *People v. Kissel*, 150 Ill. App. 3d 283, 286 (1986) (affirming dismissal of implied consent hearings where defendants were observed driving vehicles only on privately owned parking lots), *overruled on other grounds by People v. Brown*, 175 Ill. App. 3d 725 (1988). The burden should then shift to the State to present evidence that the private parking lot is publicly maintained and, therefore, falls within the definition of a "highway" under the Code. See 625 ILCS 5/1-126 (West 2016).

¶ 39       Here, the undisputed evidence shows that defendant was found sleeping in his car in a Walgreens parking lot. Because Walgreens is a private business, defendant established that he was in a private parking lot when he was in control of his vehicle. See *People v. Montelongo*, 152 Ill. App. 3d 518, 523 (1987) (restaurant parking lot private); *Kissel*, 150 Ill. App. 3d at 284 (hotel, apartment, house, and shopping center parking lots private); *People v. Kozak*, 130 Ill. App. 2d 334, 334-36 (1970) (grocery store parking lot private). Thus, he made a *prima facie* showing for rescission. See *Ayres*, 228 Ill. App. 3d at 278; *Kissel*, 150 Ill. App. 3d at 286. The burden then should have shifted to the State to present evidence that the Walgreens parking lot was publicly maintained.

¶ 40		In requiring defendant to prove that the parking lot in this case was not only privately owned but also privately maintained, the majority relies on *Helt*, 384 Ill. App. 3d 285. However, we are not bound by that decision. See *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 542 (1992). We should decline to follow the Second District's decision in *Helt* because it places an undue burden on defendants to prove that private property is not publicly maintained. Because the State is in a much better position to know if a parking lot is publicly maintained, the burden should be on the State to come forward with such evidence. See *Hussein v. Cook County Assessor's Office*, 2017 IL App (1st) 161184, ¶ 27 (placing burden of proof on party who had greater access to information needed to prove or disprove disputed fact). If the State fails to do so, it should be presumed that the property is not publicly maintained. See *Southwest Federal Savings & Loan Ass'n of Chicago v. Cosmopolitan National Bank of Chicago*, 23 Ill. App. 2d 174, 181-82 (1959) (where a party possesses information concerning a disputed fact and fails to bring it forward, a presumption arises that the fact does not exist).

¶ 41		In this case, the trial court erroneously concluded that defendant failed to establish his right to rescission because "privately owned" means "your own driveway." However, that is not the law. As set forth above, a privately owned parking lot can be owned by a business, as was the case here. See *Montelongo*, 152 Ill. App. 3d at 523; *Kissel*, 150 Ill. App. 3d at 284; *Kozak*, 130 Ill. App. 2d at 334-36. Because the undisputed evidence establishes that defendant was found to be in control of his vehicle in a privately owned parking lot, the trial court should have granted defendant's petition for rescission absent evidence from the State that the parking lot was publicly maintained.

¶ 42		I would reverse and remand for a new rescission hearing where the State may present evidence regarding the maintenance of the parking lot. If the State fails to present evidence that

the parking lot was publicly maintained, the trial court should grant defendant's petition to rescind.

¶ 43                              II. Refusal of Chemical Testing

¶ 44        When an officer has probable cause to arrest a driver for DUI, the officer may request a blood, breath, or urine test for alcohol, drugs, or a combination of both. *People v. Miranda*, 2012 IL App (2d) 100769, ¶ 17. "[U]nder certain circumstances refusal to submit to multiple testing warrants suspension of a motorist's driver's license." *People v. Klyczek*, 162 Ill. App. 3d 557, 561 (1987). However, "multiple testing is not always proper." *Id.* at 560.

¶ 45        When a defendant undergoes one chemical test of blood, breath, or urine, the officer must "present reasonable evidence for requesting a second test." *Id.* at 561-62. An officer cannot request a second test to obtain a higher blood alcohol content (BAC) reading or to confirm the defendant's alcohol level. See *People v. Kirk*, 291 Ill. App. 3d 610, 617 (1997); *People v. Krosse*, 262 Ill. App. 3d 509, 512 (1994); *Klyczek*, 162 Ill. App. 3d at 562. An officer can, however, request subsequent testing to determine if there are drugs in the defendant's system. *Klyczek*, 162 Ill. App. 3d at 562; see also *Krosse*, 262 Ill. App. 3d at 512 (officer's request for blood test after breath test proper where officer suspected defendant might be under the influence of drugs because defendant's speech and unusual behavior were not consistent with breath test results).

¶ 46        Here, only defendant testified at the rescission hearing. He testified that he agreed to take a breath test and did so. He stated that he did not remember the results of that test and did not remember whether the officer asked him to take a blood or urine test after the breath test. The State admitted into evidence a copy of the notice of summary suspension given to defendant,

19

which states that defendant refused to submit to chemical testing. This evidence was insufficient to warrant a directed verdict in favor of the State at the rescission hearing.

¶ 47        Although the State presented evidence that defendant refused to submit to chemical testing, it failed to establish that the officer's request for a second chemical test was proper. The State was required to present testimony from the requesting officer showing that he had reasonable grounds to request further testing after defendant submitted to the breath test. See *Kirk*, 291 Ill. App. 3d at 617; *Krosse*, 262 Ill. App. 3d at 512; *Klyczek*, 162 Ill. App. 3d at 561. Without testimony from the officer about his reasons for requesting additional testing, the trial court erred in granting the State's motion for a directed verdict.

¶ 48        I would reverse and remand for a new hearing. The State can then present the testimony of the requesting officer regarding his reasons for requesting that defendant undergo additional chemical testing. If the State fails to present reasonable grounds for the additional test, defendant's petition to rescind should be granted.