THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMON MONTELONGO, Defendant-Appellant.

First District (5th Division)   No. 85—3710

Opinion filed February 13, 1987.

Robert L. Rascia, of DeJohn & Associates, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Sharon L. Gaull, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Defendant was arrested and charged with driving while under the influence of alcohol after he backed up and hit another car in a private parking lot. At his request, a hearing on the issue of implied consent was conducted in the circuit court of Cook County. In that proceeding the court determined that the area where the incident occurred was encompassed within the terms of the implied-consent statute, then entered a finding of probable cause, which subjected defendant to the suspension of his driving privileges. (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(c).) Following that determination, a stipulated bench trial was held on the charge of driving while under the influence of alcohol; defendant was found guilty of that offense, placed on court supervision for one year, and fined $300.

Defendant filed a notice of appeal from both judgments; however, he has confined his argument in this court to the order entered in the implied-consent proceeding. We therefore consider only whether the trial court erred in its application of the implied-consent statute here, where the offensive driving took place in a private parking lot.

The evidence adduced at the hearing shows that the incident giving rise to the charges against defendant occurred about 4 a.m. on July 6, 1985, in the parking lot of "Tootie Toots," a restaurant and bar located at 6500 West North Avenue in Chicago. Terese Delorsinee testified that she and her friends were preparing to leave the parking lot about that time, and as she waited in the driver's seat of her car

for her friend to move, defendant backed up his station wagon and hit the front end of her car. She immediately confronted him with the situation, but he refused to cooperate and one of her friends called the police.

Officer Antonucci responded to the call, and when he arrived in the lot, he met both parties to the accident and observed the damage to their automobiles. He also noticed that there was a strong odor of alcohol on defendant's breath, that his eyes were bloodshot, that his clothes were in disarray, and that he needed help to stand up. After making these observations, the officer advised defendant that he was under arrest for driving under the influence of alcohol and issued him a citation for that offense as well as for backing up without due caution.

The officer then informed defendant of his rights under the implied-consent provision of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1) and asked him to take a breathalyzer test. When defendant refused to submit to the test, the officer informed him of the consequences; defendant persisted in his refusal, and the officer helped him to the station. Based on his professional and personal experience and the observations he made of defendant that morning, it was the officer's opinion that defendant was driving his motor vehicle while under the extreme influence of alcohol. On cross-examination he acknowledged that the parking lot was provided for the patrons of the establishment and that he did not observe defendant's vehicle leave the lot.

At this point in the proceedings, defense counsel moved for a directed finding arguing that the implied-consent statute is applicable only to activity upon the "public highways" of Illinois and has no bearing on situations such as the one at bar, where the offensive driving took place in a private parking lot. The court noted that the lot was accessible to the public highways, expressed its belief that the area was encompassed within the spirit of the law, then denied defendant's motion.

The defense called Officer Antonucci, and he testified that he had never seen any governmental agencies on the property or such entities maintaining the lot. Defendant testified that the parking lot was fenced and that he had observed a sign there which indicated that the lot was private and was provided for the patrons of the establishment. Ms. Delorsinee indicated that although the lot was open to the public, she believed it was provided solely for the use of the patrons of the bar and further stated that she had never observed any governmental agencies repairing it.

At the close of evidence and argument, the trial court found that the State had met its burden on the issues involved in the implied-consent proceeding and entered a finding of probable cause. Later that same day trial commenced on the criminal charge of driving while under the influence. Defendant stipulated to the facts presented at the implied-consent hearing, and the court found him guilty as charged and sentenced him as indicated above. In this appeal defendant contends that the order entered in the implied-consent proceeding should be reversed because the act of driving ascribed to him took place in a private parking lot where the provisions of the implied consent have no operative effect.

Illinois, as most other States, has adopted an implied-consent statute to assist in determining whether motor vehicle drivers suspected of intoxication are, in fact, under the influence of alcohol. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 461 N.E.2d 410.) In its present form, this provision of the Code provides, in pertinent part, as follows:

> "(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests *** for the purpose of determining the alcohol *** content of such person's blood, if arrested *** for any offense as defined in Section 11—501 or a similar provision of a local ordinance."

(Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(a).) "Highway" is defined in the Code as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for the purpose of vehicular travel." Ill. Rev. Stat. 1983, ch. 95½, par. 1—126.

Defendant posits that by its terms the implied-consent statute is restricted solely to situations which occur upon the "public highways." Since the evidence in the instant case clearly showed that the area where this incident occurred was a private parking lot, which was neither a "highway" as defined in the Code nor shown to be a publicly maintained area, defendant reasons that the provisions of this statute are not applicable. The State counters that given the intent of the statute to protect the public by removing drunk drivers from the roadways, and the semipublic use of the lot, that the area in question is encompassed within the meaning of the statute and urges that the trial court's finding be affirmed.

■ Initially, we note that in construing a statute the language of the statute should be given its plain and ordinary meaning. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 429

N.E.2d 402.) A reviewing court is bound to follow the precise language contained therein (*City of Northlake v. Department of Transportation* (1983), 119 Ill. App. 3d 126, 456 N.E.2d 289), and its sole function is to determine and give effect to the intent of the legislative body; it may not inject provisions not found in the statute, however desirable or beneficial they may be. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73.

The clear language contained in the implied-consent statute demonstrates that its provisions are directed at those who are in control of a motor vehicle on the "public highways" of this State. In contrast, we note that section 11—501 of the Code, which regulates driving while under the influence of alcohol, provides:

> "(a) A person shall not drive or be in actual physical control of any vehicle within this State while:
> \* \* \*
> (2) Under the influence of alcohol." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.)

It is thus apparent that the language of the two statutory provisions, which relate to drinking and driving, is inconsistent in its application, and that the "public highways" focus on the implied-consent statute is narrower than the broad language, "within the State," which is found in the statute governing the offense of driving while under the influence. Consistent with this broad terminology, courts have held that a violation of section 11—501 can occur on private, as well as public, property. See, *e.g.*, *People v. Clark* (1977), 47 Ill. App. 3d 568, 362 N.E.2d 407, citing *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239; see also *People v. Erickson* (1969), 108 Ill. App. 2d 142, 246 N.E.2d 457.

■ Notwithstanding our recognition of the fact that the implied-consent statute is to be liberally construed to effectuate its purpose of protecting the citizens of this State upon its highways (*People v. Porretta* (1984), 127 Ill. App. 3d 572, 469 N.E.2d 314) and to reduce the carnage thereon (*People v. Shorkey* (1974), 23 Ill. App. 3d 662, 321 N.E.2d 46), we conclude that the legislature intended to restrict the implied-consent provisions to those persons who operate a motor vehicle on the public highways.

A review of the legislative history of the implied-consent statute reveals that prior to its amendment in 1982, the implied-consent statute provided, in pertinent part, as follows:

> "(a) Any person who, \* \* \* drives a motor vehicle anywhere in this State thereby consents \* \* \* to take and complete a test or chemical analysis of his breath to determine the alcoholic con-

tent of his blood when made as an incident to and following his lawful arrest *** for an offense as defined in Sec. 11—501 ***." (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501.1(a).)

The 1982 amendment changed the language of the statute to its present form, which provides that anyone who drives or is in actual physical control of a motor vehicle upon the "public highways" of this State is determined to give his consent to the chemical tests or analysis to determine the alcoholic or drug content of his blood. This change, while maintaining the same broad language in section 11—501, indicates that the legislature intended to restrict the implied-consent provisions to those in control of vehicles upon the "public highways." (*Cf. People v. Bratcher* (1976), 63 Ill. 2d 534, 543, 349 N.E.2d 31; *People v. Hartwick* (1984), 128 Ill. App. 3d 272, 470 N.E.2d 606.) Thus, in the case at bar, where defendant was observed operating a vehicle in a private parking lot rather than upon the public highways when he was arrested for driving under the influence, we conclude that he was not subject to the provisions of the implied-consent statute.

In a recent case involving the interpretation of the same statute under similar facts, the second district appellate court arrived at the same conclusion. (*People v. Kissel* (1986), 150 Ill. App. 3d 283.) The *Kissel* court held that the legislature had determined that only those who drive or are in actual control of a vehicle upon the public highways of the State shall be deemed to have consented to chemical testing; and since it was undisputed that defendants in the consolidated cases had been observed driving their vehicles only upon privately owned parking lots, they were not subject to the provisions of the statute. 150 Ill. App. 3d 283, 286.

In sum, we conclude that in its present form the legislature did not intend that the provisions of the implied-consent statute be applied to drivers who were observed operating their vehicles exclusively in a private parking lot (*cf. People v. Jensen* (1976), 37 Ill. App. 3d 1010, 347 N.E.2d 371), and since this was the situation in the present case, we find that the trial court erred in determining that defendant was subject to its terms.

Accordingly, we reverse the judgment entered by the circuit court of Cook County in the implied-consent hearing.

Judgment reversed.

LORENZ and MURRAY, JJ., concur.