2022 IL App (3d) 210134

Opinion filed March 16, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-21-0134 |
| | ) | Circuit No. 21-DT-130 |
| | ) | |
| JOVAN M. HOWARD, | ) | Honorable |
| | ) | Donald W. DeWilkins, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Jovan M. Howard, was arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2020)), and his driver's license was summarily suspended pursuant to the implied consent statute (625 ILCS 5/11-501.1 (West 2020)). Howard filed a petition to rescind the suspension, which the circuit court granted. The State appeals.

¶ 2                                 I. BACKGROUND

¶ 3     In February 2021, Howard was arrested for DUI and issued a notice of statutory summary suspension for refusal to submit to or failure to complete testing (625 ILCS 5/11-501.1 (West 2020)). The notice was encompassed in a law enforcement sworn report, which provided that

Howard was passed out behind the wheel in the driver's seat, there was a strong odor of an alcoholic beverage on his breath, he admitted to drinking five alcoholic beverages, he failed to complete field sobriety tests as instructed, and he showed signs of impairment. Howard filed a petition to rescind the suspension and argued, among other things, that the officer had no reasonable grounds to believe that he was driving or in actual physical control of a motor vehicle *upon a highway* while under the influence of alcohol. See 625 ILCS 5/2-118.1(b)(2) (West 2020).

¶ 4 Howard's petition proceeded to hearing, where his counsel provided that he was arguing the "public/private property issue." In opening statements, Howard argued that the implied consent statute only applied to motorists travelling upon public roads, he was arrested at a privately-owned gas station, and the officers never saw him driving on the roadway. Further, he stated that while there may be evidence of consumption of alcohol and an open container in the vehicle, there would be no evidence of him driving while impaired. Howard called two officers to testify.

¶ 5 Officer Steven Smock testified that he worked for the Frankfort Police Department. On February 21, 2021, he had been working as an officer for about four months. Officer Smock was in uniform in an unmarked squad car with his partner. He stated that, at 4:30 a.m., he drove his police vehicle into the parking lot of a Speedway gas station. Officer Smock explained that he was getting gas to finish his shift when he observed a black Impala parked perpendicular across multiple parking spaces on the south side of the building. He stated that he did not see the Impala until he arrived at the gas station. Officer Smock noted that the vehicle was in the Speedway parking lot, he did not know who owned the parking lot, and he never saw anyone maintain it.

¶ 6 Officer Tom Buividas testified that he worked for the Frankfort Police Department. He had worked for the Frankfort Police Department for 14 years as a police officer. On February 21, 2021, he was working patrol as a field training officer. He testified that, at 4:30 a.m., he arrived at the

2

Speedway located at the intersection of La Grange Road and Laraway Road. Officer Buividas stated that he had visited this Speedway many times over the course of 14 years. He stated that he did not know who owned the gas station, the Village of Frankfort (Village) did not own it, and he never saw any maintenance occurring there. He said that he paid for gas with a credit card supplied by the Village. Officer Buividas testified that he and Officer Smock went to the gas station to get gas toward the end of their shift when he observed a vehicle parked perpendicularly across a couple of parking spaces at the gas station. He stated that he had never seen the vehicle before and did not know how long it was parked there. Officer Buividas arrested Howard for DUI.

¶ 7 The defense rested, and the State moved for a directed finding. The State argued that supreme court precedent (*People v. Relwani*, 2019 IL 123385) provided that Howard had the burden to establish that the parking lot was privately owned, and he failed to do so because both officers testified that they did not know who owned or maintained it. Howard argued that *Relwani* was distinguishable and that he put forth sufficient evidence to shift the burden to the State to present evidence that the Speedway parking lot was not private property. The court denied the State's motion for a directed finding, stating that it was viewing the evidence in the light most favorable to the non-moving party and that the officers testified that they never saw (1) Howard outside of the parking lot or (2) the parking lot maintained by the Village.

¶ 8 The State called Officer Buividas back to testify. He reiterated that he did not know who owned the gas station or maintained the parking lot. Officer Buividas stated that the gas station had two access points, one off Laraway Road and the other off La Grange Road. He recalled the conversation he had with Howard the night of their encounter, when Howard stated that he was coming from a bar located about five miles from the Speedway. Officer Buividas believed that Howard said he was attempting to head home to Homewood. Howard stated that he had consumed

3

five Modelo beers two hours prior to driving. On cross-examination, Officer Buividas stated that (1) La Grange Road was maintained by the Illinois Department of Transportation and Laraway Road was maintained by the Will County Highway Department, (2) he did not know how long Howard's vehicle was at Speedway, and (3) he never saw Howard's vehicle on the road.

¶ 9        The State also called Howard to testify. He believed that he entered the Speedway parking lot from Laraway Road. Howard stated that his car was running when he was sleeping and the officers woke him up. He was on his way to his girlfriend's home in Joliet but she did not answer the phone. Howard then pulled into the gas station and parked. He testified that he did not consume the five Modelo beers at the bar but, rather, earlier in the day.

¶ 10       The State requested that the court deny Howard's petition to rescind because (1) the officers did not know who maintained the Speedway, (2) the two roads providing access to the Speedway were publicly maintained, and (3) Howard testified that he drove on a publicly maintained road after consuming alcohol. The court asked the State where the testimony was that the officers had reasonable grounds to arrest Howard for DUI because the burden shifted. The State maintained that it proceeded narrowly because Howard only argued whether the parking lot was privately or publicly maintained and did not present any evidence regarding impairment. Howard argued there was no evidence of impairment, which was the State's burden, and proof that he had consumed alcohol earlier that day and drove was not enough to prove impairment or reasonable grounds to make an arrest for DUI. Also, he argued that there was sufficient testimony to support that the Speedway was privately owned and maintained property.

¶ 11       The court granted Howard's petition to rescind. It noted that (1) it would not be unreasonable to assume that the Speedway was not publicly maintained and (2) Howard's petition raised the basis that the officers had no reasonable grounds and that it had not heard any testimony

4

that Howard was impaired or under the influence of alcohol. The State appeals.

¶ 12                                    II. ANALYSIS

¶ 13        As part of the Illinois Vehicle Code, the implied consent statute provides:

> "Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, other bodily substance, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds or any combination thereof in the person's blood if arrested *** [for a DUI offense] ***." 625 ILCS 5/11-501.1(a) (West 2020).

If the motorist refuses or fails to complete such tests requested by a law enforcement officer possessing probable cause and after receipt of appropriate warnings and documentation, the motorist's driver's license shall be summarily suspended. 625 ILCS 5/11-501.1(c) (West 2020). However, the motorist may seek recission of the summary suspension on four enumerated bases provided by statute. See 625 ILCS 5/2-118.1(b)(1)-(4) (West 2020).

¶ 14        A petition to rescind is a civil matter where the defendant has the burden of proof to establish a *prima facie* case for recission. *People v. Ehley*, 381 Ill. App. 3d 937, 943 (2008). In making a *prima facie* case, the defendant has the primary responsibility for establishing the factual and legal basis for the recission. See *People v. Brooks*, 2017 IL 121413, ¶ 22. "A *prima facie* case is '[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.' " *Relwani*, 2019 IL 123385, ¶ 18 (quoting Black's Law Dictionary 1310 (9th ed. 2009)). Specifically, "*[p]rima facie* means, at first sight, on the first appearance; on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true

5

unless disproved by some evidence to the contrary." (Internal quotation marks omitted.) *People v. Kavanaugh*, 2016 IL App (3d) 150806, ¶ 24.

¶ 15 In recission cases, the appellate court reviews the circuit court's factual findings under the manifest weight of the evidence standard, while the court's ultimate legal ruling regarding recission is reviewed *de novo*. *Relwani*, 2019 IL 123385, ¶ 18. However, "[t]he trial judge's finding as to the *prima facie* case will not be overturned on appeal unless against the manifest weight of the evidence." *People v. Orth*, 124 Ill. 2d 326, 341 (1988). A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or the finding itself is unreasonable, arbitrary, or not based on the evidence. *People v. Sanchez*, 2021 IL App (3d) 170410, ¶ 25.

¶ 16 Here, Howard sought recission on the basis that the officer had no reasonable grounds to believe that he was driving or in actual physical control of a motor vehicle *upon a highway* while under the influence of alcohol. See 625 ILCS 5/2-118.1(b)(2) (West 2020). The Illinois Vehicle Code defines "highway" as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or located on public school property." 625 ILCS 5/1-126 (West 2020). However, "[a] parking lot that is publicly maintained and open to use by the public for vehicular travel will constitute a 'highway,' even if the parking lot is on privately owned property." *People v. Helt*, 384 Ill. App. 3d 285, 288 (2008); see *People v. Culbertson*, 258 Ill. App. 3d 294 (1994) (Metra train station was considered a public highway because the municipality maintained it).

¶ 17 Recently, our supreme court decided *Relwani*, which we find instructive on this issue. In that case, the defendant was found in an altered or partially unconscious state behind the steering wheel of a running car in a Walgreens parking lot around 3:30 a.m., which resulted in his arrest

6

and suspension of his driver's license. *Relwani*, 2019 IL 123385, ¶ 4. The defendant argued that recission was warranted because he was arrested in a privately-owned Walgreens parking lot and not a public highway as required by statute. *Id.* He testified as his only witness that he was sleeping behind the wheel of his car when police woke him up and arrested him for DUI. *Id.* ¶ 5. During cross-examination, the defendant was unable to recall details from the encounter. *Id.* ¶ 6. The State moved for a directed finding, arguing that the defendant did not meet his burden of proof. *Id.* ¶ 7. The circuit court granted the State's motion for a directed finding, concluding that the defendant failed to establish that the Walgreens parking lot was privately owned. *Id.* Our court affirmed, noting that the defendant bore the burden of establishing a *prima facie* case for recission and his testimony stating that the parking lot was near a Walgreens store was insufficient. *Id.* ¶ 8.

¶ 18        Before the supreme court, the defendant insisted that inferences from his testimony were sufficient to satisfy his burden of making a *prima facie* showing that the parking lot was not a "public highway" subject to the implied consent statute. *Id.* ¶ 21. The supreme court disagreed, noting that the defendant's substantive evidence consisted of the lot's association with a Walgreens store and its street address. *Id.* ¶¶ 21-22. The court noted that the defendant's testimony did not even specify the proximity or physical connection of the parking lot to the Walgreens store or the location of the car within the parking lot. *Id.* ¶ 22. The court explained:

> "Here, defendant's mere reference to 'Walgreens,' without more, establishes nothing about either the identity of the entity that maintained the lot or the public's use of the lot. Those are the essential substantive components for a *prima facie* showing that the parking lot was not a 'public highway' within the meaning of the relevant statutes. While a defendant's initial showing need not conclusively establish each required element of the case, it must

7

provide *some* affirmative evidence of each one and cannot rely on a passing reference and mere supposition to avoid a directed finding. Here, defendant's *prima facie* showing fell well short of the required mark." (Emphasis in original.) *Id.* ¶ 23.

¶ 19   The supreme court distinguished the case before it from *People v. Kozak*, 130 Ill. App. 2d 334 (1970), and *People v. Montelongo*, 152 Ill. App. 3d 518 (1987), explaining that police officers in both cases testified that no governmental body maintained the properties at issue *and* either the lot was owned by a nonpublic body (*Kozak*) or it was fenced with posted signage providing that the lot was private and intended for use for patrons of the adjoining business (*Montelongo*). *Relwani*, 2019 IL 123385, ¶ 25. The defendant in *Relwani* did not offer evidence of similar weight. Thus, the supreme court concluded that the circuit court's finding that the defendant failed to present a *prima facie* case was not against the manifest weight of the evidence. *Id.* ¶ 26.

¶ 20   Here, we reiterate that Howard needed to offer evidence that either the Speedway parking lot was not publicly maintained *or* that it was not open for use by the public for vehicular travel. See *Helt*, 384 Ill. App. 3d at 288. Howard chose to pursue the former, that the Speedway parking lot was not publicly maintained. However, we find that he failed to offer affirmative evidence that cast doubt as to whether the parking lot was publicly maintained and, therefore, did not establish a *prima facie* case. See *Relwani*, 2019 IL 123385, ¶ 19. Compared to both *Kozak and Montelongo*, the officers in this case did not testify that no governmental body maintained the parking lot. Instead, they stated that *they did not know* who owned or maintained the parking lot. This is not affirmative evidence casting doubt as to whether the parking lot was publicly maintained.

¶ 21   The only other evidence that Howard pointed to in support of his *prima facie* case is Officer Buividas's testimony that he used the Village's credit card to purchase gas at the gas station,

suggesting that this provides an inference that the parking lot is not publicly owned or maintained. We find this inference weak and not affirmative. Even if the credit card could stand for the proposition that the Village did not own or maintain the parking lot, it does not mean that the parking lot *was* privately owned and maintained. All we would know is that the Village did not own and maintain it, but it could still be owned and maintained by another governmental body.

¶ 22     Last, we address the court's statements regarding impairment after it denied the State's motion for a directed finding. It is clear, based on the record, that Howard proceeded under the theory that the Speedway parking lot was not a public highway and he did not present evidence contesting impairment. Since Howard did not present any such evidence, the State did not have to rebut that issue. See *Relwani*, 2019 IL 123385, ¶ 17. We note Howard was not required to testify that he was not under the influence of alcohol while operating his vehicle as long as there was evidence that, if believed by the court, could establish that fact. *People v. Tucker*, 245 Ill. App. 3d 161, 165 (1993). Howard presented no such evidence in this case.

¶ 23     Accordingly, the circuit court's denial of the State's motion for a directed finding, and ultimate granting of Howard's petition to rescind statutory summary suspension, was against the manifest weight of the evidence as it was not based on the evidence presented.

¶ 24                                   III. CONCLUSION

¶ 25     For the foregoing reasons, the judgment of the circuit court of Will County is reversed.

¶ 26     Reversed.

| | |
|---|---|
| **Cite as:** | *People v. Howard*, 2022 IL App (3d) 210134 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 21-DT-130; the Hon. Donald W. DeWilkins, Judge, presiding. |
| **Attorneys for Appellant:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Jessica A. Theodoratos, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | Steven Herzberg, of Chicago, for appellee. |